City of Fort Dodge, Appellee, v. Minneapolis & St. Louis Railway Company *et al.*, Appellants.

1. **Continuance**: INSUFFICIENT GROUNDS FOR. In an action of *mandamus,* brought by a city against the receiver of a railroad, appointed in an action to foreclose a mortgage, to compel the construction of a street crossing over its tracks, the receiver moved for a continuance until the foreclosure, then pending in the same court, should be terminated, and the deposition of the receiver could be taken, and certain creditors could intervene. *Held,* that the motion was properly overruled, because no connection was shown between the foreclosure of the mortgage and the duty to construct the crossing, and no reason given why the deposition of the receiver had not already been taken, and there being no definite showing as to the intention of creditors to intervene.

2. **Railroads**: OVERHEAD CROSSING: NECESSITY: EVIDENCE. Where an excavation sixteen feet deep and nearly seventy feet wide had been made by a railroad company in a city street, thereby preventing all travel on said street east and west of the excavation, and it appeared that the travel on different portions of said street was large, and that if a suitable crossing were made it would be of great advantage to the people residing on said street, and to the general public, and would enable persons having occasion to go to that part of the city to avoid much danger and delay incident to the use of a crossing on a neighboring street, *held,* that the erection of an overhead crossing at such point was a public necessity.

3. ——: ——: RECEIVER: JURISDICTION. Proceedings for an order of *mandamus,* requiring the receiver of said railroad to construct a crossing over said street, having been instituted in the court which appointed the receiver for the property of the company in this state, *held,* that, the pleadings being sufficient to invoke the jurisdiction of the court, and it appearing that an overhead crossing was necessary to put said street in as good condition as it was before the excavation was made, the court properly required the erection of an overhead crossing by the receiver according to a plan and specifications incor-

porated in the judgment, and the grading of approaches, although the plaintiff's petition did not describe the kind of crossing desired; it being the duty of the court in ordering such improvement by the receiver to ascertain and limit its probable cost.

4. ———: STREET CROSSINGS: DUTY OF RECEIVERS: RIGHTS OF CREDITORS: INTERSTATE COMITY.   The duty imposed by statute upon railroad companies, where a street has been raised or lowered for the purpose of having the railway pass under or over it, to put it in as good condition as it was before, is one which follows the property, in case of insolvency, into the hands of a receiver, and the creditors of the company have no such rights in the premises as to make them necessary parties to a proceeding to compel the receiver to perform such duty by the expenditure of money in his hands.   And when such proceeding is instituted in a court in this state which appointed and controls the receiver for the property in this state, comity does not require it to await the orders and decrees of the court of another state in the appointment and control of the same person as receiver for the property of the company in such other state.

5. ———: PRIVILEGED COMMUNICATION: ATTORNEY AND CLIENT.   Where the testimony of a witness related to actions he had taken, and statements he had made as attorney for the defendants, and the authority under which he acted, and some of it, at least, was material and competent, *held*, that an objection to the whole of such testimony, on the ground that it was a disclosure of privileged communications, was not well taken.

*Appeal from Webster District Court.*—HON. JOHN L. STEVENS, Judge.

SATURDAY, JANUARY 28, 1893.

ACTION to compel the defendants to construct a crossing over certain railway tracks in a street of the plaintiff.   There was a trial by the court, and a judgment in favor of the plaintiff.   The defendants and an intervenor appeal.—*Affirmed.*

*A. E. Clarke* and *R. M. Wright*, for appellants.

*Botsford, Healy & Healy*, for appellee.

ROBINSON, C. J.—The plaintiff is a municipal corporation duly organized under the laws of this state. Mitchell's subdivision of block 142 of the Town Com-

pany addition to the town of Ft. Dodge was surveyed and platted in the year 1867. One of the streets included in the plat is Warren street. It extends from Butterworth street, on the east, westward across Lemp street, to Sixth street, and is further north than any other street which extends from east to west in that part of the city. In the year 1881 the defendant, the Minneapolis & St. Louis Railway Company, a corporation, made an excavation across Warren street, from a point north of it, in a direction west of south. The excavation was about sixteen feet in depth, and nearly seventy feet in width, and through it were laid several tracks of the railway company. The plaintiff asked that a peremptory writ of *mandamus* issue, and that the defendants be required to construct forthwith a safe and sufficient crossing over and across the excavation in Warren street.

On the twenty-eighth day of June, 1888, in an action then pending in the district court of Hennepin county, in the state of Minnesota, which had been brought by Henry Seibert, trustee, for the foreclosure of a mortgage on the property of the railway company, the company was decreed to be insolvent, and W. H. Truesdale was appointed receiver of all its property. On the same day, in an action then pending in the district court of Webster county, in this state, for the foreclosure of the same mortgage, in the name of the same trustee, Truesdale was duly appointed receiver of the property of the company in this state. He qualified and entered upon the discharge of his duties as receiver, and took possession of the railway property of the company, which he has been operating since the thirtieth day of June, 1888. The company and the receiver were made parties defendant. Seibert, as trustee, intervened, and joined the defendants in resisting the demands of the plaintiff. The district court found that the plaintiff was entitled to the relief

demanded, and ordered the receiver to construct a crossing, and to grade the approaches necessary to its use. It also ordered that a peremptory writ of *mandamus* issue against the defendants, commanding them to perform the requirements of the judgment.

I. This action was commenced on the twentieth day of July, 1889. On the seventh day of October, 1890, the defendants filed their answers, and the intervenor his petition. On the next day the receiver filed a motion asking a continuance of the case until the action for the foreclosure of the mortgage, then pending in the same court, should be terminated, and, in case that should be found to be an insufficient ground, that the cause be continued until the deposition of the receiver could be taken, and until certain creditors could intervene. The motion was overruled. No reason for a continuance until the foreclosure proceedings should be terminated was shown. The duty of the receiver to construct the crossing did not depend upon the decree which was asked for in that case. The fact which the receiver claims his deposition would show was that he had no funds with which to make the desired crossing. The allegation in regard to the creditors whose intervention was desired is to the effect that the receiver had been notified by counsel that they proposed to resist the expenditure which the crossing would make necessary. No reason for the failure to take the deposition in time for use at the trial was given, and the showing in regard to the purpose of the creditors to intervene was altogether too indefinite and uncertain to require a continuance on that ground, even if it were conceded that they would have had a right to intervene, on the showing made. The motion was properly overruled.

II. The existence of Warren street as a public way at the time the excavation was made and the railway through it was constructed, is denied by the

1. CONTINUANCE: insufficient grounds for.

2. RAILROADS: overhead crossing: necessity: evidence. appellants.  The plat of Mitchell's subdivision was filed for record about fourteen years before the excavation was made. The evidence justified the court in finding that the street had been dedicated to the public, and accepted and used for several years before that time, and that it was then a public street.  The excavation prevents all travel between points east and points west of it on Warren street.  The evidence tends to show that it is a source of much trouble to the public, especially to people living on and near Warren street, and that, if a suitable crossing were made, it would be of great advantage to those people, and to the general public; that the amount of travel between the business and other portions of the city south of Warren street, and the country north of it, is large; that the railway crossing on Sixth street is especially dangerous for persons approaching it from the south; that the switching of cars in the vicinity of that crossing causes frequent delays to persons using Sixth street; and that the desired crossing would open a new route, which would enable persons who have occasion to go through that part of the city to avoid the danger and delays incident to the Sixth street crossing.  The showing that the crossing is a public necessity fully sustains the finding of the district court to that effect.

It is said, however, that Warren street would not be in condition for travel if the crossing were built, for the reason that there is a steep hill in the east part of it, which is not practicable for loaded teams, and which would prevent a general use of the street until it is properly graded.  That objection does not apply to the use of the street by citizens living on it who desire to pass to and from their homes, which are west of the hill and east of the excavation. Moreover, the evidence shows that a bridge has already been built over Soldier creek, opposite the west end of Warren street, with the

view to the construction of the crossing in question,
and that the improvement of the street east of the
crossing was suspended after the excavation was made,
and because of it. The showing of good faith on the
part of the city is ample to justify an order for the
crossing before the hill is graded.

III. The petition did not describe the kind of
crossing desired, and the appellants contend that the
relief granted by the district court was not
authorized by the pleadings. It should be
remembered, in this connection, that this
proceeding, although in form an action of *mandamus*,
was instituted in the court which appointed the receiver
for the property of the company in] this state, and
which has authority to control his actions, and the
property which is in his possession. If the pleadings
and the evidence properly submitted show that the
plaintiff was in fact entitled to the relief granted, it
should not be defeated because the relief might have
been obtained in a more summary and less formal man-
ner. The pleadings were sufficient to invoke the juris-
diction of the court, and the proof showed that the
desired crossing was a public necessity, and within the
power of the court to order. The plaintiff did not, in
terms, ask for an overhead crossing, but the facts
which were pleaded and established by the evidence
show that a grade crossing would not have been a
"good, sufficient, and safe crossing over and across"
the excavation which the petition demanded; that it
would not have put the street in as good condition,
approximately, as it was in before the excavation was
made; and that an overhead crossing was necessary to
accomplish that purpose. *City of Newton v. Chicago, R.
I. & P. Railway Co.*, 66 Iowa, 422; *Gates v. Chi-
cago, St. P. & K. C. Railway Co.*, 82 Iowa, 528.
The judgment required the erection of an over-
head crossing according to a plan and specifica-

3. ——: ——:
receiver: jur-
isdiction.

tion which were incorporated in the judgment, and
the grading of approaches. The pleadings did not con-
tain any specific description of the crossing desired;
but it was within the power of the court, under the
averments of the petition, and the provisions of the
statute applicable to such cases, including those which
relate to receivers, to ascertain the kind of crossing
which was required, and to provide, in a specific and
definite manner, for its construction. Evidence was
introduced on the part of the plaintiff which tends to
show that a crossing substantially like that ordered by
the court was a proper one; and, although some of the
specifications adopted by the court were not referred to
in the evidence, yet they are not made the subject of
complaint.

The appellants insist that the court erred in not per-
mitting the receiver to adopt such a plan for the
crossing as seemed to him proper,—not that it erred in
incorporating certain specifications in the plan which it
ordered to be carried into effect. The defendants
offered no evidence in regard to the kind of a crossing
which should be made, but relied upon their defense
that a crossing was not needed, and that the court was
not authorized by the law and the facts to order one in
this case. In our opinion the defense, to that extent,
was not well grounded. In reaching the conclusion
that the court did not err in adopting a plan and speci-
fications for the crossing, we rely in part upon the fact
that it was within the power, if not the duty, of the
court, in ordering an improvement to be made by the
receiver, to ascertain and limit its probable cost.

IV. Much is said in argument in regard to the
trust character of the property which is in the hands of
the receiver, the right of creditors of the
company to appear and resist the appli-
cation of any part of that property to the
construction of the crossing in question,

4. ——: street
crossings:
duty of re-
ceivers:
rights of cred-
itors: inter-
state comity.

and the duty of the courts of this state to respect the orders and decrees of the district court of Minnesota in appointing a receiver and managing the property of the company. It may be conceded that all the property of the company in the hands of the receiver, including the revenues derived from its use, is held in trust for the benefit of creditors of·the company. But it does not follow that they can control the expenditures of money and the use of the property in all cases. It is for the general benefit of all the parties in interest that the railway of the company be operated, and that its track and appurtenances be kept in a proper condition for that purpose. But the law gives to municipal corporations, and to others, rights which can not be ignored or defeated by the insolvency of the company and the demands of its creditors. Among such rights is that of insisting that where a street has been raised or lowered for the purpose of having the railway pass over or under it, as soon as practicable thereafter it shall be put in as good repair and condition as it was in before the alteration was made. Code, section 1262. The burden of putting it in the condition required is imposed on the railway company, and attaches when the railway is constructed. The burden is so connected with the right to maintain and operate the railway that liens acquired by creditors on the railway property must, of necessity, be subject to it, as much as they are to the ordinary expenses incurred in operating the railway. Therefore, it is within the power of the proper court to order the receiver to construct the crossings necessary in such cases, notwithstanding the objections of the holders of liens created by a mortgage of the railway property. Such lienholders are not necessary parties to a proceeding instituted to compel the making of the crossing, although there may be cases to which they would be proper parties. Nor does comity demand that the enforcement of the duty imposed by statute be deferred

to await the action of the courts of another state. It is not a case to which the rules of comity are applicable, but involves rights which grow out of the use of property within the state, to enforce which such property should be subjected, if necessary. The action of the district court of Hennepin county in Minnesota, and of the district court of Webster county in this state, in the cases pending for the foreclosure of a mortgage on the railway property, could not affect the right of the plaintiff to insist upon the making of a proper crossing; and the district court did not err, in this case, in refusing to make its action dependent upon the decrees which should be rendered in those cases.

V. R. M. Wright was called as a witness for the plaintiff. Before he testified, his testimony was objected to, on the ground that it was "incompetent, immaterial, and because the same called for a communication between an attorney and his client." The objection was properly overruled, for the reason that, at that time, there was nothing before the court to indicate what the testimony would be.

5. ——: privileged communication: attorney and client.

When the witness had completed his testimony the defendant moved to strike it from the record, on substantially the same grounds as those stated in the objection. The ruling on the motion was reserved, without objection, and it does not appear that it was ever made; and, as this is an action at law, we may presume that it was waived.

But treating the objection as made at a proper time, and as being before us for determination, we must hold that it is not well grounded. The testimony of the witness related to actions he had taken, and statements he had made, as attorney for the defendants, and the authority under which he acted. It does not appear that he testified to any privileged communication, while some of his statements tended to show an

admission that the crossing should be a bridge, and that the receiver had funds in his possession which he declined to use in making the crossing, on the ground that he thought the rights of the city were inferior to those of others. Some of the evidence was material and competent. The objection and motion did not specify the parts which it was claimed should be excluded, but were directed to all of it, and were properly overruled, for that reason.

VI. The conclusions we have announced dispose of all material questions in the case. The evidence, so far as questioned, is ample to support the findings of the district court, and we discover no sufficient ground for disturbing its judgment. AFFIRMED.